# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

WILLIAM R. HARRIS,

    *Plaintiff*,

vs.

HEUBEL MATERIAL HANDLING, INC.,

    *Defendant.*

Case No. 09-1136-EFM

## MEMORANDUM AND ORDER

This diversity action arises out of injuries that Plaintiff suffered while driving a pallet truck that was repaired and maintained by Defendant. Plaintiff alleges that Defendant negligently repaired and maintained the pallet truck. Defendant denies any wrongdoing and has moved for summary judgment on Plaintiff's negligence claim (Doc. 82). In addition to moving for summary judgment, Defendant has moved to exclude the testimony of one of Plaintiff's experts (Doc. 81). Plaintiff has also moved to exclude the testimony of one of Defendant's experts (Doc. 79). For the reasons stated below, the Court grants in part and denies in part Defendant's motion for summary judgment and denies Plaintiff's and Defendant's motions to exclude expert testimony in their entirety.

## I. BACKGROUND

On August 2, 2007, Plaintiff was injured when the Raymond Model 112TM-FRE60L "walker rider" pallet truck he was driving struck an industrial shelving unit, which contained stacks of dog food, in a warehouse operated by General Pet Supply ("GPS"). The pallet truck driven by

Plaintiff was owned by GPS. GPS and Defendant had a Scheduled Maintenance Service Agreement. This agreement provided that Defendant would perform scheduled maintenance on GPS' pallet trucks and would repair them when they needed it.

On December 7, 2006, GPS phoned Defendant requesting service on the brakes of the subject pallet truck. Brad Smith, one of Defendant's service technicians, responded to the call. Mr. Smith adjusted the brakes on the truck, but noted that "[t]his is the last adjustment for this 112. Will need new pads next time. We are out of adjustment room." Over the next six months, Defendant made three regular scheduled maintenance visits. However, Defendant did not replace the brakes on the subject pallet truck during any of these visits.

On July 26, 2007, GPS again phoned Defendant requesting service on the brakes of the subject pallet truck. This time, Defendant sent Landon Wiseley to respond to the call. Mr. Wiseley adjusted the brakes and cleaned the brake shoes and drum. Following the performance of these tasks, Mr. Wiseley tested the truck's brakes without a load, despite the fact that the maintenance instructions for the truck, which are produced by the truck's manufacturer, state that the brakes should be tested with a rated load. According to Mr. Wiselely, the truck stopped within four feet of the brakes being engaged. After testing the truck's brakes, Mr. Wisely reported to Sean Ritter of GPS that the brakes were working appropriately and that the truck was safe to use.

Following the service call, the brakes on the pallet truck continued to act "sluggish." One pallet truck operator stated during his deposition that, as the days went by, the brakes "got a little worse, little worse and then [they] just, you know, just completely went back to point A where [they were] not working at all." Plaintiff contends, however, that on the day of the accident, August 2, 2007, the brakes were working, but were sluggish. However, they did not work when Plaintiff

attempted to engage them by letting go of the truck's control handle seven to nine feet in front of an industrial shelving unit. Because the truck did not stop when Plaintiff let go of the control handle, Plaintiff ran into the shelving, which resulted in the shelves' contents falling on Plaintiff and severely injuring him.[1]

Following the accident, on August 2, 2007, Defendant's service manager, David Baker, inspected the pallet truck. Mr. Baker also tested the truck's braking capabilities with the load that GPS had on it at the time. Mr. Wiselely was present during this test. Mr. Baker observed that the truck's braking system "did stop the truck but it allowed travel a little farther than specs or usual." Mr. Wiselely testified during his deposition that the truck's brakes were functioning in the same fashion on August 2 as they were on July 26.

On May 7, 2009, Plaintiff filed the present action, asserting a negligence claim against Defendant. Plaintiff alleges that Defendant was negligent in the following four ways: (1) failing to properly repair the brakes on the pallet truck on July 26, 2007; (2) failing to properly repair the brakes on the pallet truck between December 6, 2006, and July 26, 2007; (3) failing to take the pallet truck out of service on July 26, 2007; and (4) failing to understand or investigate the service history of the pallet truck at the time of its repair on July 26, 2007. Defendant has moved for summary judgment on Plaintiff's claim (Doc. 82). In addition, Defendant has requested that the Court exclude or limit the testimony of Philip Buckley, one of Plaintiff's expert witnesses (Doc. 81). Plaintiff has also motioned this Court to exclude the testimony of Defendant's expert witness Dr. Edward Caulfield (Doc. 79).

---

[1]Plaintiff is now a T-12 paraplegic.

## II. PARTIES' MOTIONS TO EXCLUDE EXPERT WITNESS TESTIMONY

### A. Standard of Review

Opinions based on scientific, technical, or specialized knowledge are governed by Rule 702. Rule 702 provides that a witness who is qualified by knowledge, skill, experience, training, or education may testify in the form of opinion or otherwise as to scientific, technical, or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, "if, (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[2] A district court has broad discretion in deciding whether to admit expert testimony.[3]

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[4] To determine whether an expert opinion is admissible, the Court performs a two-step analysis. First, the Court must determine "if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience of his discipline.' "[5] The Court must then inquire into whether the proposed testimony is sufficiently "relevant to the task at hand."[6] An expert opinion

---

[2] Fed. R. Evid. 702.

[3] *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citing *Orth v. Emerson Elec. Co., White-Rodgers Div.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[4] *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

[5] *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

[6] *Id.* (quoting *Daubert*, 509 U.S. at 597).

"must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . absolute certainty is not required."[7]

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability.[8]

*Daubert* sets forth a non-exhaustive list of four factors that the trial court may consider when conducting its inquiry under Rule 702: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community.[9] These factors may or may not be pertinent, depending on the nature of a particular issue, the expert's particular expertise, and the subject of the expert's testimony; however, the Court may consider these factors where they are a reasonable measure of reliability, which is a consideration the Court has broad latitude to determine.[10]

## B. Analysis

Both parties have filed motions to limit the testimony of the other party's expert. Plaintiff has moved to limit the testimony of Defendant's expert Dr. Edward Caulfield and Defendant has moved to limit the testimony of Plaintiff's expert Philip Buckley. Neither party has argued that the

---

[7] *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

[8] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004).

[9] *Daubert*, 509 U.S. at 593-94.

[10] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

other's expert is not qualified to offer testimony on the matters for which they have been retained. The Court will address these motions in turn.

*1. Dr. Edward Caulfield*

Plaintiff seeks to exclude Dr. Caulfield's opinion that "any attempts to quantify the brake capacity before the accident by post accident testing is unavailing because the forklift handle was damaged in the accident." Dr. Caulfield's opinion is based on his testing of on an exemplar pallet truck, which showed that when a falling object strikes the pallet truck's control handle with a force of 10,000 lbs or greater, the truck's braking components will be damaged and the truck's breaking ability will be impaired. Plaintiff claims that this opinion should be excluded because it is not relevant. Plaintiff's claim that this opinion is not relevant is premised upon Plaintiff's belief that the testing conditions for the exempler pallet truck did not sufficiently mirror those that were present at the time of the accident.

After reviewing the parties' briefing and the applicable documents, the Court finds that Plaintiff's argument is meritless. To begin with, Dr. Caulfield's opinion is relevant to a key question in this case: whether the fact that the brakes failed a post-accident brake test is evidence that the brakes were faulty before the accident. In addition, Dr. Caulfield's testing is sufficiently moored to the facts of this case. Here, there is evidence indicating that the subject pallet truck was struck by pallets of falling pet food – e.g., scraping and smears on the control handle, Brinell markings, wood forced into the base of the handle, and accident scene photographs showing the truck surrounded by large amounts of pet food. Furthermore, based on the damage to the handle and pivot bushing, Caulfield has testified that he believes that more than 10,000 lbs of force struck the truck's control arm. While it is true that Dr. Caulfield cannot say for certain how

much force actually impacted the handle, this fact goes to the weight of the opinion, not its admissibility. Accordingly, the Court denies Plaintiff's motion.

## 2. *Philip Buckley*

Philip Buckley was retained by Plaintiff to determine whether the brakes on the subject pallet truck are faulty. In his expert report, Mr. Buckley stated that the truck's brakes are ineffective in their current condition. He also identified specific components of the truck's braking system that deviate from the expected normal practice. At his deposition, Mr. Buckley further opined that the brakes were not working because of a systemic failure, as opposed to the failure of one particular component in the braking system. Defendant argues that Mr. Buckley should not be allowed to testify at trial because any testimony he would give would not be reliable.[11] Defendant's argument is predicated upon the follows facts: (1) that, in formulating his opinions, Buckley relied, at least partially, on Mr. Wiseley and Mr. Smith's conclusions that the brake liners were worn, a conclusion that Defendant's expert challenges, instead of visually inspecting the liners for himself; (2) that Buckley did not operate the subject pallet truck under its own power; and (3) that Buckley did not quantify the effect that each deviant component had on the system's ability to stop the truck nor did he rule out the possibility that the brakes' failure was caused by a design defect as opposed to a negligent repair.

The Court finds that Defendant's argument is without merit. First, the fact that Buckley relied on information provided by others regarding the condition of the brake pads, as opposed to visually inspecting the pads himself, which he attempted to do, but did not succeed, does not

---

[11]Defendant also states in its memorandum in support of its motion that Buckley's testimony is not relevant. However, Defendant has offered no argument in support of this bald assertion. Whether the subject pallet truck's brakes are faulty is a key issue to this case. As a consequence, the Court denies Defendant's motion in so far as it is based on this ground.

render Buckley's opinions unreliable.[12] As is clear from the Advisory Committee's Notes to Fed. R. Evid. 703, the federal rules of evidence contemplate an expert's reliance on information provided by others. "To the extent that [this information] is subject to question, . . . such questions are relevant to the credibility and weight to be given to [Buckley's] opinion[s].[13] Thus, reliance on information provided by Heubal's service technicians does not serve as a basis for excluding Mr. Buckley.

Additionally, the fact that Buckley tested the brakes' performance by manually pushing the pallet truck around the warehouse, as opposed to operating it under its own power, which is the manner he would have preferred and the one that is recommended by the pallet truck's manufacturer, is not a basis for excluding Mr. Buckley's testimony. "The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.' "[14] Buckley has asserted in his affidavit that the brakes function in the same manner from a mechanical standpoint whether or not the truck is turned on. Thus, when Buckley performed his test, he was able to observe how the brakes functioned despite the fact that the pallet truck was not operating under its own power. Therefore, Buckley's failure to perform the test he preferred and that the manufacturer recommended goes to the weight of his opinions, not their admissibility.

---

[12]*See, e.g., Miles v. Cushing Pub. Sch. Indep. Dist. No. 67*, 2008 WL 7146395, at *4 (W.D. Okla. Oct. 17, 2008).

[13]*See, e.g., United States v. Water Supply & Storage Co.*, 2008 WL 1930602, at *6 (D. Colo. May 1, 2008).

[14]*In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (quoting *Kannankeril v. Terminix Int'l Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).

Lastly, the fact that Buckley did not quantify the effect that each deviant component he identified had on the brake system's ability to stop the truck nor rule out the possibility that the brakes' ineffectiveness was attributable to a factor beyond Defendant's control is not a basis for excluding Buckley. Buckley's opinions are based on his experience, his investigation and inspection of the subject pallet truck, tests that he performed on the truck, and statements made by relevant actors. The Court has previously noted that this method is sufficiently reliable for purposes of Rule 702.[15] Thus, Buckley's failure to quantify the effect of identified deviant components and to rule out alternative causes also goes to the weight of his testimony, not its admissibility.[16]

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

As noted above, Plaintiff is asserting a negligence claim. To succeed on this claim, Plaintiff must prove the following four elements: (1) the existence of a duty to the plaintiff; (2) a breach of that duty; (3) injury; and (4) proximate cause.[17] Defendant contends that it is entitled to summary judgment on this claim because Plaintiff cannot establish elements two and four.

**A. Standard of Review**

The Court is familiar with the standards governing the consideration of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[15] *See, e.g., Ash Grove Cement Co. v. Emp'r Ins. of Wausau*, 246 F.R.D. 656, 664 (D. Kan. 2007).

[16] *See, e.g., McDonald v. N. Am. Speciality Ins. Co.*, 224 Fed. Appx. 761, 767 (10th Cir. 2007).

[17] *See, e.g., D.W. v. Bliss*, 279 Kan. 726, 734, 112 P.2d 232, 238 (2005).

material fact and that the moving party is entitled to judgment as a matter of law."[18]  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[19]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[20]  In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[21]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[22]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[23]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[24]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[25]  The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[26]

---

[18] Fed. R. Civ. P. 56(c).

[19] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[20] *Id.*

[21] *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[23] *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[24] *Celotex*, 477 U.S. at 323.

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[26] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[27]

**B. Analysis**

Defendant first contends that it is entitled to summary judgment because Plaintiff cannot show that Defendant breached a duty it owed to him. More specifically, Defendant argues that Plaintiff cannot prove that Defendant should have provided more information to service technician Landon Wiseley when it dispatched him to service the brakes on the subject pallet truck on July 26, 2007, that Wiseley should have had a full load on the truck when he tested the brakes after adjusting them on July 26, 2007, and that Wiseley should have recommended that the truck be removed from service until a brake job could be performed.

In support of its argument that it is entitled to summary judgment on Plaintiff's claim that Defendant breached the applicable standard of care by failing to inform Wiseley of the subject pallet truck's service history, Defendant cites to deposition testimony given by Rob Ross, Plaintiff's expert, in which Mr. Ross states that the information given by Defendant to Mr. Wiseley for the July 27, 2007, service call is normal for the industry and that he personally would not look beyond the most recent service report to determine whether there was an outstanding problem that the service technician needed to know about. In response to Defendant's argument, and in an attempt to raise a factual issue, Plaintiff cites to the following evidence: (1) Mr. Ross' statement in his preliminary summary report that the "Heubel service technician should have been aware of the past service history and issues with the brakes prior to him performing his inspection and service work;" (2) Mr.

---

[27]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

Ross' deposition testimony that he would inform a service technician responding to a service call that a previous service technician reported that the brakes on the subject vehicle needed to be replaced; (3) deposition testimony from David Baker, Heubel's service manager, that he would have told Mr. Wiseley that Brad Smith concluded that the brakes on the subject pallet truck needed to be replaced had he read Mr. Smith's December 7, 2006, service report; and (4) paragraphs six and seven of Mr. Ross' April, 2010, affidavit, which provides, in essence, that Defendant acted outside the norm of the industry by not informing Mr. Wiseley of Mr. Smith's December conclusion.

The Court agrees with Defendant that Plaintiff's evidence is insufficient to create a factual question for the jury on this issue. To begin with, Mr. Ross' statement in his preliminary summary report is merely a conclusion, as no factual basis or underlying rationale is provided for it.[28] Furthermore, when read as a whole, Mr. Ross' deposition testimony, at best, supports the conclusion that Defendant had a duty to inform Ms. Wiseley of information contained in the most recent service report, which Plaintiff has failed to show contained Mr. Baker's December conclusion. Additionally, the fact that Mr. Baker would have told Mr. Wiseley of Mr. Smith's conclusion had he known about it is not probative on the question of whether Baker (or anyone else at Heubal for that matter) had a duty to look through seven months worth of service reports to determine whether any outstanding maintenance issues existed. Lastly, paragraphs six and seven of Mr. Ross' affidavit are of no assistance to Plaintiff because the Court finds that they there are attempts to create a sham fact. These paragraphs contradict Mr. Ross' sworn testimony that the information provided by

---

[28]*See Rowell v. Jim Walters Homes, Inc.*, 1993 WL 34698, at *2 (10th Cir. Feb. 8, 1993) ("There is thus a level of conclusoriness beyond which an expert's affidavit may not fall if it is to create (or foreclose) a genuine issue of fact on summary judgment. The line between the inadequate and the effective expert affidavit falls somewhere between simply averring 'it is so' and providing some fact-based reasoned explanation for the expressed opinion." (internal citation omitted)).

Heubal to Mr. Wiseley on the July 27 service call was "normal for the industry," that he does not know whether it is the standard in the industry to relay past diagnoses to a service technician when he goes on a service call, and that he would not look past the most recent service report to determine whether any outstanding repairs existed. In addition, none of the three factors enunciated in *Franks v. Nimmo*[29] for excusing such contradictions are satisfied in this case: Ross was cross examined at his deposition; Ross' affidavit is not based on newly discovered evidence; and Ross does not claim, nor does the record reflect, that he was confused at his deposition.[30] Therefore, for the aforementioned reasons, the Court grants Defendant's motion on Plaintiff's negligence claim in so far as it is based on the theory that Defendant was negligent in not informing Mr. Wiseley about the subject pallet truck's repair history.

With regards to Defendant's second argument, the Court finds that it is without merit. Plaintiff has produced, among other things, an affidavit from Mr. Ross, which states, in paragraph ten, that the standard in the industry is to test a pallet truck's brakes with a full pallet load.[31] It is undisputed that Mr. Wiseley did not test the subject pallet truck's brakes with a full load. Therefore, a factual question exists as to whether Defendant violated the applicable standard of care by testing the brakes on the subject pallet truck in the manner that he did.

A factual question also exists as to whether Defendant was negligent in not recommending that the subject pallet truck be removed from service. Mr. Ross has testified that a service technician

---

[29] 796 F.2d 1230 (10th Cir. 1986).

[30] *See, e.g., id.* at 1237 (discussing the three factors).

[31] Although Defendant does not explicitly state that this portion of the affidavit should be considered a sham, it does hint that the Court should so find. The Court disagrees that such a finding is warranted. Mr. Ross was never asked during his deposition whether Mr. Wiseley violated the relevant standard of care by not testing the subject pallet truck's brakes without a load. As a consequence, his April, 2010, affidavit cannot contradict his previously given deposition testimony.

-13-

should recommend that a vehicle be taken out of service if the brakes are not stopping the vehicle within the distance recommended by the manufacturer when they are tested. Plaintiff has put forth evidence showing that Mr. Wiseley did not properly test the subject pallet truck's brakes and that, had Mr. Wiselely performed the proper test, he would have found that the brakes were not stopping the truck within the specified distance. The Court finds, viewing this evidence in the light most favorable to Plaintiff, that a reasonable jury could find that Defendant was negligent in not recommending that the subject pallet truck be removed. Accordingly, the Court denies Defendant's motion as it relates to this theory.

In addition to contending that it is entitled to summary judgment because Plaintiff cannot show that it breached any duty that it owed him, Defendant also contends that it is entitled to summary judgment because Plaintiff cannot show that Heubel's purportedly negligent maintenance of the pallet truck resulted in diminished brake performance and Plaintiff's injuries. The Court disagrees. Plaintiff has put forth the following pieces of evidence: (1) expert testimony that if Mr. Wiseley would have tested the subject pallet truck with a load he would have discovered that the brakes were not functioning properly; (2) that after Defendant repaired the pallet truck's brakes, but before the accident, the brakes continued not to work; (3) that Plaintiff attempted to engage the brakes before hitting the shelves; (4) post-accident testing revealed that the brakes were not functioning properly; and (5) a post-accident inspection by Plaintiff's expert revealed that numerous components of the truck's braking system were worn or maladjusted. Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could find that Defendant's negligence was the proximate cause of Plaintiff's injuries. Accordingly, the Court denies Defendant's summary judgment motion in so far as it is based on this ground.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Exclude Testimony of Defendant's Expert Dr. Edward Caulfield (Doc. 79) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude and/or Limit the Testimony of Philip Buckley (Doc. 81) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 82) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated this 17th day of August, 2010.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE