# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WILLIAM R. HARRIS, *Plaintiff*, vs. HEUBEL MATERIAL HANDLING, INC., *Defendant*. | Case No. 09-1136-EFM |

## MEMORANDUM AND ORDER

This diversity action arises out of injuries that Plaintiff suffered while driving a pallet truck. Plaintiff alleges that his injuries were the direct result of Defendant's negligence in repairing and maintaining the truck. This matter is now before the Court on the following three motions: LSI Corporation's and Liberty Mutual Insurance Company's amended motion to intervene (Doc. 99) and motion to intervene (Doc. 98) and Defendant's motion in limine (Doc. 107). For the following reasons, the Court denies the outstanding motions.

## I. BACKGROUND

Plaintiff was rendered a T-12 paraplegic when the pallet truck he was driving struck an industrial shelving unit, thus dumping pallets of dog food on Plaintiff, in the warehouse he was working. Shortly before the accident, Defendant performed maintenance on the truck. Following his accident, Plaintiff filed a workers' compensation claim against his employer, LSI Corporation ("LSI"), and its insurer, Liberty Mutual Insurance Company ("Liberty"). In settlement of the claim, Plaintiff, LSI, and Liberty agreed to, among other things, Plaintiff receiving $737,161 for future

medical expenses. This agreement was approved by the administrative law judge ("ALJ"), who found the settlement to be just and fair, and in Plaintiff's best interest. Furthermore, because the agreement absolved LSI and Liberty from any liability for future medical expenses in excess of $737,161, LSI and Liberty sought a determination from The Centers for Medicare and Medicaid Services ("CMS") that the agreed upon amount was reasonable and was not an attempt to shift the burden for payment of medical expenses for the treatment of a work-related condition to Medicare,[1] which they received.

On May 7, 2009, Plaintiff filed the present action, asserting that Defendant negligently maintained and repaired the pallet truck he was driving at the time of the accident and seeking up to $6,266,773 for future medical expenses from Defendant. On May 11, 2009, Plaintiff notified a subrogation adjustor for LSI and Liberty that he had filed this action. On September 27, 2010, LSI and Liberty filed their first motion to intervene.

## II. ANALYSIS

As noted above, there are currently three motions now pending before the Court: LSI's and Liberty's motion to intervene and amended motion to intervene and Defendant's motion in limine. The Court will review these motions in turn.

---

[1] Although it is not clear whether CMS has the statutory authority to require settling parties to submit their agreement to it for approval, it nevertheless appears that it would behoove the parties to seek such acquiescence. *See* 42 C.F.R. § 411.46(b)(2) (stating that "[i]f a settlement appears to represent an attempt to shift to Medicare the responsibility for payment of medical expenses for the treatment of a work-related condition . . . Medicare will not pay for treatment of that condition").

**Motions to Intervene**

In their two page motions, LSI and Liberty ask the Court to allow them to intervene in this matter. In support of their request, LSI and Liberty assert that their ability to protect their statutory right to subrogation, as set forth in K.S.A. 44-504(a), will be substantially impaired or impeded if they are not allowed into the case. Defendant does not oppose the motions, so long as LSI and Liberty are named in the case caption and make initial disclosures pursuant to Fed. R. Civ. P. 26(a) or produce all documents and information relating to the amount of the lien they seek to protect, including all documents and information regarding Plaintiff's Medicare Set Aside. Plaintiff, however, does object, arguing that the motions should be denied because LSI and Liberty have not shown that intervention is proper in this case.[2]

Rule 24 of the Federal Rules of Civil Procedure govern intervention. In particular, subsection (a) governs intervention as a matter of right and subsection (b) governs permissive intervention. Because LSI and Liberty did not state under which subsection they are basing their motions, the Court will analyze the motions under both.

Subsection (a)(2) of Rule 24 provides that upon "timely motion, the court must permit anyone to intervene" in an action when the movant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest."[3] The Court has interpreted this language to mean that the

---

[2]LSI and Liberty did not file a reply to the parties' responses to their motions.

[3]Subsection (a)(1) allows a party to intervene as a matter of right if a federal statute grants them an unconditional right to do so. LSI and Liberty have not cited to a federal statute affording them such a right, thus, they cannot intervene under Rule 24(a)(1). LSI and Liberty have, however, cited to K.S.A. 44-504, which does grant them a right to intervene in a case brought by an injured worker against another. The fact that K.S.A. 44-504 grants them the

movant must show that the following four elements are met in order to intervene as a matter of right: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by the existing parties."[4]

Beginning with the first element, LSI's and Liberty's requests are untimely. The Tenth Circuit has recognized the following four factors as being relevant when deciding the timeliness element: "(1) the length of time the movant knew of its interests in the case; (2) prejudice to the existing parties; (3) prejudice to the movant; [and (4) existence of unusual circumstances]."[5] Here, over sixteen months elapsed between when the prospective interveners were informed of the litigation and when they filed their motion.[6] The prospective interveners have provided no justification for this lengthy delay. Therefore, the Court finds that the first factor militates in favor of finding that the motions are untimely. With regard to the prejudice to the existing parties factor, it is somewhat difficult to assess because it is not clear to what extent LSI and Liberty wish to intervene. The existing parties have failed to articulate any possible prejudice to them, though, so

---

right to intervene, though, is of no consequence in this case. *See Hill v. Kan. Gas Serv. Co.*, 203 F.R.D. 631, 634 (D. Kan. 2001) (requiring the prospective intervener, a utility ratepayer board, to show that intervention was proper under either Rule 24(a)(2) or (b), despite the fact that K.S.A. 66-1223 provided it with the right to intervene in formal complaint cases that could affect ratepayers). Therefore, in order to intervene in this federal case, LSI and Liberty must make the showing required by Rule 24(a)(2) or (b)(1)(B), as opposed to simply relying on a state statute. *See Low v. Altus Fin. S.A.*, 44 F. App'x 282, 285 (9th Cir. 2002); *cf. Hanna v. Plumer*, 380 U.S. 460, 473-74 (state law is not controlling over the Federal Rules of Civil Procedure).

[4]*S.E.C. v. King Real Estate Inv. Trust*, 222 F.R.D. 660, 667 (D. Kan. 2004).

[5]*Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (alterations in original omitted).

[6]During these sixteen months, the Court decided Defendant's motion for summary judgment. In addition, discovery was substantially completed. *See* Doc. 89, p. 7 (stating that on May 15, 2010, "[d]iscovery is nearly complete, with one deposition of a fact witness remaining").

the Court concludes that the second factor weighs in favor of a finding of timeliness. The third factor weighs against a finding of timeliness, as the prospective interveners have not alleged in their briefing how they would be prejudiced if they were not allowed to intervene, which they have the burden of doing.[7] The last factor carries no weight in this case because there has been no showing of unusual circumstances by the Plaintiff, Defendant, or prospective interveners. Viewing the Tenth Circuit's factors as a whole, the Court concludes that LSI's and Liberty's motions are not timely. Accordingly, they should be denied.[8]

Moreover, the fourth element for intervention as a matter of right is not met. There has been no attempt by LSI and Liberty to show that their subrogation interest will not be adequately protected by the existing parties. The value of LSI's and Liberty's interest is wholly contingent upon Plaintiff's ability to recover on the claims he has asserted,[9] and LSI's and Liberty's interest is protected by statute. Thus, to the extent that Plaintiff does recover damages for his medical bills and lost wages, LSI and Liberty have a lien on that money. Therefore, the Court concludes that LSI's and Liberty's motions should also be denied because there has not been an adequate showing with regard to the fourth element for intervention under Rule 24(a)(2). The Court finds it unnecessary to evaluate the remaining elements.

---

[7]*See, e.g., United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 466 (5th Cir. 2007).

[8]*See Tyson Foods, Inc.*, 619 F.3d at 1239 (affirming denial of motion to intervene because it was untimely).

[9]*See City of Stilwell, Okla v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (stating that "representation is *adequate* when the objective of the applicant for intervention is identical to that of one of the parties" (internal quotation marks omitted)).

Rule 24(b)(1)(B) provides an alternative avenue for LSI and Liberty to seek intervention.[10] Subsection (b)(1)(B) states that "[o]n timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."[11] "The court's discretion under Rule 24(b) is substantial."[12]

Intervention under Rule 24(b) is not proper in this case. First, as noted above, LSI's and Liberty's requests are not timely.[13] Second, LSI and Liberty have not provided the Court with any reason, beyond a mere conclusory statement, for why intervention is necessary. Therefore, for these reasons, the Court concludes that LSI and Liberty should not be allowed to intervene under Rule 24(b), and will deny the prospective interveners' motions in so far as they ask for such relief.

**Motion in Limine**

In its motion, Defendant asks the Court to prohibit Plaintiff's counsel from asking any questions, eliciting any testimony, or making any reference to evidence of future medical expenses in excess of $737,161, the amount that Plaintiff is to receive for future medical expenses from LSI pursuant to Plaintiff's settlement with LSI. Defendant bases its request on its belief that the earlier

---

[10]Subsection (b)(1)(A), which allows the court to permit a party to intervene if a federal statute grants the party the conditional right to intervene, is not applicable because, as explained above, LSI and Liberty have not cited a federal statute in support of their motions. *See Hill*, 203 F.R.D. at 635.

[11]Fed. R. Civ. P. 24(b)(3).

[12]*In re Motor Fuel Temperature Sales Practices Litig.*, 2009 WL 1208074, at *4 (D. Kan. May 1, 2009); *see also* 6 James Wm. Moore, *Moore's Federal Practice* § 24.10[1], at 24-57 (3d ed. 2004) ("The [trial] court possesses broad discretion in determining whether to grant permissive intervention and will rarely be reversed on appeal.").

[13]*See, e.g., NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied.").

settlement, which was approved by an ALJ, coupled with CMS' conclusion that a payment of $737,161 adequately considers Medicare's interest, fully determined the issue of what Plaintiff's future medical expenses are, and, as a consequence, Plaintiff should be collaterally estopped from asserting a greater amount. Under Kansas law, in order to invoke the doctrine of collateral estoppel, a defendant must show:

> (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue litigated must have been determined and necessary to support the judgment.[14]

"Collateral estoppel, also known as issue preclusion, is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."[15]

In their briefing, neither party cited to a case decided by a Kansas court addressing the question of whether a third-party can use a settlement agreement between a workers' compensation claimant and his employer, which was approved by both an ALJ and CMS, to collaterally estopp the claimant from seeking damages against it in excess of those provided for by the agreement. Further, the Court has not been able to locate a Kansas case deciding the question. Thus, it appears that Kansas courts have not decided the matter now before this Court. While the Court has not found one case from another jurisdictions that is directly on point, it has discovered numerous cases where the presiding court had to determine whether the settlement of a non-workers' compensation claim

---

[14]*Jackson Trak Group, Inc. v. Mid States Port Auth.*, 242 Kan. 683, 690, 751 P.2d 122, 128 (1988). The Court looks to Kansas law because the full faith and credit statute, 28 U.S.C. § 1738, "directs a federal court to refer to the preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

[15]*Nichols v. Bd. of Cnty. Comm'rs of Cnty. of La Plata, Colo.*, 506 F.3d 962, 967 (10th Cir. 2007) (internal quotation marks omitted).

had a preclusive effect on a particular issue in a later action. Most, if not all, of the courts faced with this question have concluded that it does not, unless it is clear that the parties to the agreement intended for the underlying issues of the case to be considered decided for purposes of future litigation.[16] The courts have premised their conclusion on the fact that when parties settle their dispute there has been no judicial determination on the underlying issues, and, as a consequence, it cannot be said the issues have been actually litigated and decided, which is a necessary requirement for collateral estoppel.

The Court believes that if the Kansas Supreme Court was faced with the question presented in this case that it would follow the path set forth in the cases emanating from its sister courts. First, the rationale behind not assigning preclusive effect to the agreements at issue in those cases is just as applicable to the type of agreement that is at issue in this case. While it is true that the agreement in question here, unlike those in the other cases, was approved by outside entities, the Court concludes that this factual twist is of little consequence. Significantly, neither of the entities that reviewed the agreement purported to conclusively decide the amount of future medical damages that Plaintiff would incur; rather, the ALJ merely stated he had made the determination that the settlement amount was fair and reasonable, and in the plaintiff's best interest, and the CMS merely declared that the settlement adequately considered Medicare's interest.[17]

---

[16]*See, e.g., Nichols*, 506 F.3d at 968-69; *United States v. BotefuhrI*, 309 F.3d 1263, 1281-82 (10th Cir. 2002); *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986); *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1272-73 (5th Cir. 1986); *Arnett v. Envtl. Sci. & Eng'g, Inc.*, 657 N.E.2d 668, 673 (Ill. App. Ct. 1995); *see also Arizona v. California*, 530 U.S. 392, 414 (2000) (" 'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of [RESTATEMENT (SECOND) OF JUDGMENTS § 27 describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action.' " (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment e (1982)))..

[17]Further evidence that CMS did not intend to fully determine the issue of what Plaintiff's future medical expenses would be can be found in the fact that in its letter stating that the settlement adequately considered Medicare's interest, CMS stated that once the settlement monies for future medical expenses are exhausted, Medicare will pay those

Second, applying the collateral estoppel in this case would not further any goals that the creators of the doctrine intended, as Defendant has not been subject to multiple actions, no judicial resources have been expended on deciding this issue, and there is no possibility of inconsistent decisions because no decision on the issue has been rendered.

Third, to hold otherwise would run counter to Kansas law, which favors compromise and settlements of disputes.[18] Instead of contributing to an environment conducive to the parties conceding issues that they may have won had the matter proceeded to trial, which is nearly always necessary for settlement to occur, the Court would be encouraging claimants to fully litigate every minute issue against his employer in order to avoid being precluded from claiming his range of damages in a later civil suit against the person who caused his injuries.[19] Such a result is untenable.

Therefore, in order for the settlement agreement in question to have a preclusive effect in this case, Defendant must show that the Plaintiff and LSI intended to foreclose future litigation on the issue of future medical expenses. Based on the material before it, the Court finds that Defendant has wholly failed to make the necessary showing. Nothing in its briefing or in the record suggests that the agreement's parties intended to limit Plaintiff's recovery of future medical expenses, in an action brought against a different entity, to the amount contained in the settlement. Accordingly, the Court

---

expenses that are covered. *See* Doc. 107-6, p. 3; *see also* 42 C.F.R. § 411.46(a) ("If a lump-sum compensation award stipulates that the amount paid is intended to compensate the individual for all future medical expenses required because of the work-related injury or disease, Medicare payments for such services are excluded until medical expenses related to the injury or disease equal the amount of the lump-sum payment.").

[18]*See, e.g., Lewis v. Gilbert*, 14 Kan. App. 2d 201, 202, 785 P.2d 1367, 1368 (1990).

[19]*Cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment e ("[I]f preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.").

concludes that Plaintiff's attorney should not be precluded from seeking future medical expenses in excess of $737,161 in this litigation, and, thus, denies Defendant's motion.

**IT IS THEREFORE ORDERED** that LSI's and Liberty's Amended Motion to Intervene (Doc. 99) is hereby DENIED.

**IT IS FURTHER ORDERED** that LSI's and Liberty's Motion to Intervene (Doc. 98) is hereby DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Defendant's Motion in Limine (Doc. 107) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 29th day of March, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE